24-3023 Miller v. CNH Industrial. Sorry about that Mr. Hawes. You do not want to argue. I do not. Please stop. I do not. May it please the court, counsel. This is a case about an experienced farmer who chose to get off a moving tractor that he well understood was against his rule, against all the warnings that were in the tractor and in the manual itself, something he had never done before. He literally opened the door, looked out, saw the wheels moving, had to miss the dual wheels and continued to proceed on. This is a failure to warn case only, not a design defect. I have three primary issues that I want to discuss today. The first being whether the court erred in not granting either summary judgment or judgment as a matter of law after hearing the evidence and not submit this case to the jury on a failure to warn because it's an open and obvious condition. The other two issues that I want to touch on deal with an issue of whether there should be a new trial in the event the court here doesn't flip or reverse the trial court on the judgment as a matter of law. And that is, number one, that the trial court erred in giving the Kansas compare to fault instruction and whether that violated Rule 49 Federal Rules of Procedure. And then secondly, generally, that the court denied a new trial as a result of some individual and collective misconduct on the part of counsel that I believe prejudiced the jury against C&H. Issue number one that I want to talk about, the open and obvious condition. Let me stop you first because we have an argument that you can't raise that because you raised it on summary judgment and the court determined that there was an issue of fact and that you therefore precluded from raising it here. Yes, Your Honor. If there are genuine issues of material fact, those are fact issues. But the issue has been preserved. We raised it in a JML arguing that this is a matter of law for the court, that this isn't something that should be submitted to the jury. That's been preserved. I believe in our motion for summary judgment, it was preserved in our motion for JML after the plaintiff's evidence as well as our oral JML after the close of all evidence and again post-trial. So I believe we have adequately raised all those issues throughout. And so if it were an issue of fact, it would be barred because of the summary judgment, but you're arguing that it should be viewed as an issue of law and therefore it's not barred. Well, I'm not sure it would be barred even by the summary judgment, Your Honor, because it still is an issue of law and where there is an issue of law, the court should have granted that summary judgment. So I don't think it should be barred, but if there's a genuine issue of material fact, then it's a jury question I think is the issue and was the response to that. So just passing that, what do you view the open and obvious condition to be? The open and obvious condition, Your Honor, is that you do not exit a tractor while it's in motion or moving. You bring the tractor to a stop and set the brakes. That is undisputed that that is an open and obvious condition, and I submit to the court that under Kansas law, the 6033-05, plaintiff's counsel admitted that that is common sense and open and obvious to anyone. They would know that you never exit a moving tractor, number two, so you have the objective standard, and number two, Mr. Miller himself admitted that he knew and understood you never leave a moving tractor while it's moving. Okay, so if we were talking about my tractor, which it would be open and obvious to anyone that if you got off it when it was moving, it would run over you, it doesn't have some of the features that this tractor has that are advertised, for lack of a better term, as keeping it safe, where if you get up off the seat, it will stop. The brake will engage automatically, that type of thing. Don't we have to look at this and say it's open and obvious that you don't get up and jump off a moving tractor, and don't we have to add to that? If the tractor appears to have safety features that will stop it when you get off the seat? Your Honor, I believe that the answer I would give to that is that the passage that is referenced in the manual in one place that the plaintiff refers to is that if you leave the seat for five seconds, that the electronic park brake will engage. It doesn't say it's okay to exit the moving tractor. Nowhere does it suggest that. I'm with you. But doesn't that suggest to a reasonable user that if they get up out of the seat, it's going to stop? It does not, or should not, Your Honor, for a couple of reasons. Number one, Mr. Miller, first of all, admits that he never relied upon that section on the day of the accident. Number two, no one else has relied upon that to say, I can be excused from an open and obvious condition that is getting off of a moving tractor because a provision says that if I do take that risk and hazard that I could be run over when I get off the tractor, that the brake will engage. What happens, Your Honor, if the incident happens when Mr. Miller slips going down the stairs before the five seconds, before the park brake engages? There's no excuse, and Mr. Miller admits that there is no excuse from the clear, unambiguous, understood warnings to never exit a moving tractor. Was there any testimony in the trial court about how long it takes to get out of that tractor and be on the ground? Yes, and Mr. Miller, it was varied, but yes, that he could be potentially on the steps. He testified I could be off of the tractor, which means he would have had to jump past the dual wheels. If you saw the picture of the tractor, it's a wide dual wheels. If you just step down and the tractor's moving, which he observed, you'd be run over. It could be run over before that five seconds occurs. Similarly, if you really wanted to rely upon that, then would you not wait for the tractor to stop? There's no reasonable perception, Your Honor, either that that would take place when the tractor's moving because this never occurred before. That's not how it works, and Mr. Miller never experienced that either before, so whatever argument is being made that his misconception allows him the excuse to avoid what is an admitted open and obvious hazard is, I think, self-made, and the court shouldn't under the Heiner case and under the Dakota case, which is an out-of-jurisdiction case, and other cases this court has ruled upon the Daimler case, the Butler case. This is not something that should excuse him from what are adequate warnings that exist. Don't you have a situation where the – I mean, one way to interpret the argument is that, you know, getting off a moving tractor is open and obvious. I'll spot you that. But here the manufacturer has designed some safety features, including an automatically engaged parking brake. And, you know, maybe there's a design defect theory here, and I understand your argument there, but isn't the problem here is that they decided to provide a warning, and maybe the warning was inadequate or confusing or, you know, didn't go far enough. So once the company decided to do a warning, which maybe it didn't have to under Kansas law, but once it did, the warning has to adequately communicate the danger. And here, you know, the warning says, park brake automatically engages if the operator leaves the seat for more than five seconds. Why couldn't a reasonable operator interpret that as, I'm up for five seconds, boom, it engages? If that is all read in context with the operator's manual, Your Honor, which I believe that they should be doing, number one, that provision is in the operational section, not in the safety and warning section that display dangers, hazards, warnings, cautions. That is an instruction. Our position, of course, is that all of those situations where the operator leaves the seat for five seconds, that occurs while the tractor is stopped. Mr. Miller conceded, and I'll read the court some of his testimony in a moment, or reference his testimony, where he concedes that that section, where it refers to leaving the seat for five seconds, is in the discussion about park brakes, all of which occur when the tractor is parked. The park brake engages when you shut off the key, occurs when it's parked. The tractor, excuse me, the park brake engages 45 seconds if the operator is sitting in the seat. If there's no movement, the tractor is stopped. Mr. Miller conceded that he knew and understood that section referred to when the tractor was stopped. So to make it subjective. Well, he certainly testified that he believed that it would stop in five seconds when he got out of the seat on this occasion and exited the tractor. He did testify to that, Your Honor, for sure. So why isn't it, you know, you've got . . . You want to define the open and notorious issue in a way that's different than what the facts are, and as the district court said, it's not the issue that's before it, the way you keep wanting to define the issue. Why isn't it proper to let the jury do exactly what it did and determine, allocate the fault between the two of them? Maybe you're right. Maybe even if he believed it would engage in five seconds, it was negligent not to wait until it stopped before he jumped off the tractor. So maybe that's why the jury decided he was partially negligent here. I believe that in that analysis, Your Honor, the court would be overturning longstanding Kansas law as well as what this district court has done in terms of when a hazard is open and obvious. And I do go back to always the hazard in this case is that you're exiting a moving tractor, subjecting you to be run over or injured because of that scenario. There is no excuse for that ever. So the law would then be reading that it's okay to violate an open and obvious hazard for which, number one, under Kansas law, you don't even need a warning, but number two, there were warnings that were clear and adequate that Mr. Miller knew and understood and then ignored those warnings. So the court would be citing a precedent, I think, that it's okay to ignore those clear and unambiguous warnings when that should not be the case. And Kansas law doesn't support that under 3305, nor did that get supported in the Hiner case. And the argument I think the court is getting at here and what the plaintiff's is is that there's two separate risks, I think, is what the issue is here. And Hiner looked at that, Your Honor, and I've spent time trying to really understand that from the perspective that the Hiner case was the guy who had a bale fall over on him, and the issue was that John Deere should have warned about having a ROPS or other devices that would prevent that. What he didn't know about was the loader unintentionally going up, and so that was a new risk that he didn't understand. And when he thought he was carrying the load low, he thought it was safe to do so. That came on unexpectedly, and the court allowed that to be a fact question. That doesn't exist here. There was never an excuse by Mr. Miller to know and understand that he could have, that it was safe to get out of a moving tractor. It didn't say it's safe to get out of a moving tractor when it said the park brake would engage in five seconds. So I believe, Your Honor, that this would set a bad precedent under Kansas law. I'm going to quickly touch on the second issue I wanted to do, and that's Rule 49. The court allowed the plaintiff to argue the comparative fault analysis, and it is clear in this case, Your Honor, in doing that, that it violated the affiliated case in federal court that that didn't happen. But most importantly, the plaintiff's attorney argued consistently that this is what will happen. If you find 50 percent or more, Mr. Miller recovers nothing. And the example of that happening was the jury awarded Mrs. Miller a $500,000 award when the pretrial demand was $300,000 to get to the mathematical equation of the jury result. That's exactly why Rule 49 in federal court says don't do that. So that is an error that should have not occurred. We clearly had a jury that came to a conclusion based on their desires from passion and prejudice. And then finally, Your Honor, this design issue permeated this case, and the argument was if you get out of a tractor and it's moving, it won't stop until it hits a school or a bus or something else. That's a design defect case that they dismissed. We brought motions in limine on that, and we tried to make sure it didn't get intertwined because it's so close to this failure to warrant issue, but it continued to go on over time and time again. Was that the only statement that you identify as was the one where it said it would keep running until it hit? That was an opening, Your Honor. They also did it throughout with questions. Even the judge pointed out that this is sounding like a design defect case as opposed to a failure to warrant. They did it with failure to produce evidence, witnesses about design. So they brought it up numerous times, Your Honor, many times. And it's in the record. I'll refer back. I want to save just 20 seconds or whatever I have. I'm sorry. Let him go ahead because I forgot my question. All right. Let's hear from the opposing counsel. May it please the Court. My name is Gay Tibbetts, and I represent Brian Miller, whose life changed in 2018 when the entire length of his body was run over by a seed drill that was being pulled by his Case New Holland tractor. I want to talk about what you're worried about and what Mr. Haas had difficulty articulating, and that is our position in this case and how it follows Tenth Circuit and Kansas law. Their primary argument is that the court should have ruled, both at summary judgment and after trial, that as a matter of law, it had no duty, no duty to Brian Miller because the danger of exiting a tractor was open and obvious. Tell me this before you go there.  Does it mean, do you agree that he never read the whole manual, including the parts about don't jump off this tractor while it's moving? No, I disagree with that wholeheartedly. He went painfully through everything. Before it happened, the testimony is, when we look at the record, the testimony will be that he read all the relevant parts. Yes. Okay. Absolutely. 100%. Because that sounds different than what I heard from your opposing counsel. Okay. Thank you. Okay, but here's the deal. Know that on that day when Brian left the tractor, right, he did not think he was leaving a moving tractor and he was assuming that risk. He thought he was leaving a moving tractor that was about to stop. Okay. And that's the problem. And 10th Circuit law in Heiner. So you would agree that exiting a moving tractor that you don't think is going to stop would be, in fact, an open and obvious danger that nobody needs to warn you about? I would think that, yes. I would think that, and I would also point out, though, that he keeps talking about that the statute refers to open and obvious, but it does, but it also says that it should have been realized by a reasonable user or consumer. So he's saying, as a matter of law, you need to decide, A, that the open and obvious thing that hurt him was just that he left the moving tractor and ignore that he left a moving tractor he thought was going to stop, and, B, that you ought to rule as a matter of law that a reasonable person wouldn't have done that. And Judge Krause said two different times, I'm not going to do that. You've got evidence here that the danger of leaving the tractor when he thought it was going to stop is a different danger than just leaving a tractor out of the blue, which is also the – when he took that risk, 10th Circuit law, and I think two of the cases that help the most are Burton, which is a smoking case, is that if the danger that you're saying is open and obvious is not the danger that actually injured you, then there is a duty to warn. So in Burton, for example, one of the questions was, well, you knew that smoking was bad for you. And Mr. Burton said, well, I lost my legs because smoking destroyed my cardio – I mean my – it starts with a V. Anyway, my vascular system, exactly. And they said, well, that's a different – you know, what happened to you is different than that warning that you got about cancer. Well, it isn't here. I'm sorry? It isn't here. He got run over by a moving tractor. He got moved over – he got run over by the thing the tractor was pulling. Well, he didn't get hit by his tractor. Well, you say there's no difference, but Mr. Haas said, you know, he was going to get hit by the – even if it hadn't had time to stop, he was going to get hit by the wheel. No, he wasn't. He cleared the wheel. He was down in front of the thing, and if it had stopped – and remember, he was dragged, or he continued to be held above that seed drill for quite some time and had the tractor stopped, that would not have happened. Let me see if I understand exactly what happened. So he makes it past the wheel. Yes, absolutely. It's moving. He gets past the wheel.  And then the next thing he's doing is bending over to pick something up when the drill hits him. Yes. Okay. The drill hits him, and he gets lodged kind of under a wheel, and then he goes along with that drill for a while, and then eventually he's pulled under and run over. Right. Well, but that – I mean, that doesn't matter. It could have drug him for two seconds additionally, and it would be a substantial injury. Well, if he would have been run – It shows it didn't stop in five seconds. The length of his body would not have been run over by those discs. So if it's an open and obvious danger to jump off a moving tractor, and you believe if you get out of the seat it's going to stop in five seconds. Five seconds after you've left the seat. So, of course, you're going to be up. You open the door. I mean, would a reasonable person wait five seconds before they jump off the tractor? Should he have done that? Absolutely. I mean, that's why he got a substantial amount of the fault. He got a substantial amount of fault here. It's an open and obvious risk or danger to get out of any moving vehicle while it's moving, not just this tractor. And would any reasonable person think that a vehicle's parking brake would be the appropriate way to stop a moving motor vehicle? Right. I'm glad you brought up the parking incident. This is called an electronic park brake. It is used – it sets automatically so that he doesn't have to set the brake when either the tractor's been still for 45 seconds, when he turns the key off, or according to the manual, when the operator leaves the seat for five seconds. But also, the EPB, which is on the end of the shuttle, which is on the left side of the tractor steering wheel, can be used to slow the tractor. I mean, that's the video we sent you. That's the part of the manual that we've put out. So that it's not just the fact that they call it a parking brake. It doesn't mean it can only be used in parking. You can use it to slow and stop the tractor. Was there a warning in the cab? There was a warning about not getting off the tractor. There was nothing about what would stop or not stop. Was there a warning about not leaving a moving tractor? Was there that warning in the cab? I believe that there was. Why wouldn't that adequately warn a reasonable user? Because he understood from what he had learned from the tractor company that the tractor was going to stop. It was not going to be a moving vehicle for very long. He jumped the gun a bit by maybe a few seconds or a second. Yes, ma'am. I have a question about the jury instruction. Yes, ma'am. Hey, you've got to make sure you don't assess him more than 50% of the fault or he gets a big goose egg. Okay, so let me explain. In Kansas, we have comparative fault where the plaintiff, if they get 50% or more, they get zero. It is the law over in state court. I saw that Judge Krause kept saying across the street there. But it's the law over in state court that you have to tell the jury that. For a number of reasons, that one being because you don't want a jury in a personal injury case to be calculating damages when the plaintiff is not going to receive anything. And so that is the law in state court. But not in federal court. Well, I mean, it depends. If it's substantive, it is the law in federal court. But I understand the argument. Is it substantive or procedural? I could make either argument, but I think that Judge Krause read 41, which gives him discretion about what to do, and decided that he was going to err on the side of doing what the state law said. I mean, I think he said that actually. He said, if the Tenth Circuit tells me I shouldn't have done it, I'd rather be following the state law. So now we have to decide. Is it substantive or procedural? It would turn out to be, the result of it would turn out to be substantive if, well, it doesn't, I don't know that it matters. It matters hugely. Well, but procedural. Because we're sitting in diversity. Well, I understand that. I think, I guess that I would say that it is substantive in that the Kansas courts have said that in order for a jury to apply and understand comparative fault, they need to understand how it works. That's what the Kansas law is. They need to understand how it works. They need to understand that, you know, if they give the plaintiff's judgment. That sounds procedural. Well, no, I do think that that's. Sounds like it's talking about how we're going to advise the jury, not the effect of what the jury decides. Well, I do think, though, that there is a public policy in Kansas that they want the jury to understand what comparative fault is. And we don't have pure comparative fault. You wouldn't need to tell them if, you know, it was pure comparative fault. But we have that modified version that 50% or more means there's no recovery. And so the policy of Kansas is when you ask them to do this, you explain to them how it works, what it does. But if we were to find it's procedural as opposed to substantive, we'd have to grant a new trial, wouldn't we? I don't think you would. If you look at the Rule 41, and it says that the court can decide what an appropriate jury verdict is, given what is at stake, I think that the judge would have discretion to say, I don't want my jury in there calculating damages for two days if the plaintiff is not going to get any. Is there more than that here? I mean, when we're looking at this, do we look at it as a situation where we view the instruction as arguably improper, but by itself not creating reversible error? Absolutely. But at the same time, we also have to consider it in the context of argument and trial counsel suggesting to the jury, this person's going to get nothing if you go over the amount. All I did was read the instruction to them. I don't know that I've ever been told I can't read an instruction to a jury, and he didn't object. Let's remember that, too. I mean, that's the problem with all of his objection arguments, is that he didn't object at trial. And even in his opening brief, he doesn't, you know, here's the objection, here's the ruling, none of that. It's this sort of vague, they just kept bringing up the design thing, and she argued this in closing argument. I can't imagine that they get a new trial because I read the jury instruction to them. I mean, that just makes no sense. Well, it depends on if the jury instruction was wrong, doesn't it? There is no case that has ever said that this jury instruction would be wrong. I mean, this would be a brand new idea. This is the jury instruction that they use over in federal court and state court every day. Well, it would be wrong if it's not procedural. I mean, if it's procedural. If it's procedural. I don't think that it would be wrong if it's procedural, because I don't think that there is a federal law that says you can't tell the jury that. If you want to talk about the case. Is it a harmless error? If it's error, is it harmless? I would assume so. But the case that he's relying on, it's not a tort case. It was, you know, it was just a case where there was already, they weren't going to have to decide damages. And so what happened is she didn't, Judge Brattle did not tell the jury, by the way, if you give them more than 50% of fault, they're not going to get anything. And then when they lost, they came back and said, you know, you should have told them that. And she said, you know, I don't really have to. In this case, it doesn't make sense. There was no reason to tell them. I have the discretion. So if you were to say that Judge Krause made an error using this verdict form that's used in Kansas, that's used in Kansas federal court, that nobody's ever said is a problem, that would be brand new, brand new law. And I agree, I mean, and I agree. Who's to say they would have given him 56% if they hadn't been told that? Yes, sir. Under 60-3705A. Yes, sir. There's an exclusion for safeguards. Why wouldn't the parking brake be a safeguard that would be, and the duty to warn would be excluded under that? You know, one of the reasons I think it's hard in this case for us to talk about the duty to warn is that they breached their duty to give a safe instruction. You know, they had the duty to give an instruction for safe use. And clearly there were problems with, clearly if you take the jury and say is there evidence to support the jury's verdict that there were problems with these instructions, you would have to agree that there are. And so when you say is the parking brake, you know, the fact that it will set itself automatically, is that a safeguard? I don't know that that would matter in terms of their inability to give an adequate instruction about how it works. Why wouldn't that be a safeguard? I mean, it's designed to slow or keep station area a large factor. And so you're saying under A or under the statute that says that they don't have a duty if the safe, they don't have a duty to warn about safeguards if it's open and obvious? Yeah. I think they do have a duty to instruct and to warn about how the tractor works so that the open and obvious condition that caused his injury was that he did not understand how it worked. He did not just jump off a tractor. He left a tractor that he understood, given what they had told him, was going to stop. Do you have? Thank you, counsel. Your time has expired. I think give Mr. Hawes two minutes. Thank you, Your Honors. Number one, Your Honor, it is a safeguard. And you don't need that for the tractor. What is a safeguard? Well, a safeguard is a. . . It's not intuitive to me. It's a lot like the Daimler case where there are additional safeguards that could exist if you had operator awareness signals that came on, if there were flashing lights that came on, which, by the way, we did have. And Mr. Miller ignored and admitted he ignored them, as did his expert admit that they ignored them. So it is a safeguard for which there is no requirement that there be. . . Did you make that argument in your brief about the safeguard? In all of it, Your Honor, yes. I mean, a safeguard applies to warnings and instructions, yes, and all of those issues. It applies to everything. When there is an open and obvious condition, there's not a duty to warn further, and it applies equally to warnings and instructions, which are safeguards. It's the same. I take it to be the same thing. Is the safeguard here the warning or the park brake? Well, the warning, Your Honor, is that don't get out of the tractor while it's moving. What's the safeguard? Well, the safeguard or the additional safety feature is a park brake turns on if an operator leaves the seat for five seconds when it's stopped. That's an additional safety. When you turn the key off and the park brake engages, that's an additional safeguard in the event that an operator doesn't set the park brake when he or she leaves the seat or turns it off or as they sit there for 45 seconds. But as I think Judge Carson pointed out, or maybe you, Your Honor, the warning that existed, the ones that have the warning phase, the items that define what a warning is, are on the cab of the tractor that Mr. Miller had to grab as he opens the door and looks at directly, do not get out of the tractor while it's moving or set the park brake, do not exit the seat to do that. So he violated those clear warnings. Rule 49 is procedural, Your Honor, and it did prejudice in this case, and we did have motions in the nominee to preclude that. So the fact that I didn't object to them arguing, I objected throughout the course of the trial. Do we have any case law about whether an instruction on comparative negligence is procedural or substantive? Is it okay if I respond, Your Honor? Yes, please. Okay. Keep talking until I tell you not to. Okay. The affiliated case is the one that the judge found that it is procedural, and that's why the court said I'm not going to do that, because if I go further, it violates Rule 49, which is for the judge, the court to do, to handle the evaluation of what's the impact of the verdict. And when you give that, you've usurped the judge's right in Rule 49, which is procedural, and you've allowed the jury to make a determination, which, in fact, we know it's not harmless in this case because they, in fact, did it, and we have this in spades because we saw what they did with the comparative fault where they could only award 300, and they calculated how to do exactly that. All right, counsel. Your time has now expired. We appreciate the arguments on both sides. Thank you, Your Honor. The case is submitted.